**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

| | |
|---|---|
| YOKAIRA ALTAGRACIA MATIAS CRUZ,<br><br>Plaintiff,<br><br>vs.<br><br>EARLY WARNING SERVICES, LLC,<br><br>Defendant. | **Civil Case No.: 2:26-cv-04100**<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. Venue is proper in this District under 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff Yokaira Altagracia Matias Cruz ("Plaintiff") resides in Brentwood, New York, and qualifies as a "consumer" as defined and protected by the FCRA.

5. Defendant Early Warning Services, LLC ("Early Warning") is a consumer reporting agency with a principal place of business located at 300 W. Clarendon Avenue, Suite 240, Phoenix, Arizona 85013.

## FACTUAL ALLEGATIONS

### Identity Theft

6. In or around February 2022, an unauthorized individual ("Fraudster") used

Plaintiff’s personal identifiers without her consent, knowledge, or authorization to open a Bank of America checking account in Plaintiff's name (“Fraudulent BoA Checking Account”).

7. Plaintiff did not open, authorize, or benefit from the BoA Checking Account.

8. On or about September 13, 2022, and December 30, 2024, the Fraudster also used Plaintiff's personal identifying information to open two JPMorgan Chase Savings Accounts (“Fraudulent JPMorgan Chase Savings Accounts”) in Plaintiff's name.

9. Plaintiff did not open, authorize, or benefit from the Fraudulent JPMorgan Chase Savings Accounts.

**Plaintiff’s Discovery of Identity Theft**

10. In or around December 2024, Plaintiff received six JPMorgan Chase debit cards issued in her name that she had neither requested nor authorized.

11. Alarmed by the unexpected debit cards, Plaintiff immediately contacted JPMorgan Chase to report the apparent fraud.

12. Following Plaintiff's report, JPMorgan Chase closed Plaintiff's legitimate deposit account as a security precaution because of suspected fraudulent activity.

13. Plaintiff maintained only one legitimate deposit account with JPMorgan Chase, which she opened on or about December 11, 2021.

**Plaintiff Obtains Her Credit Reports and Confirms the Reporting of the Fraudulent Bank of America and Chase Accounts in Plaintiff’s Consumer Files**

14. After JPMorgan Chase closed her legitimate deposit account, Plaintiff reasonably believed that her identity theft had been addressed.

15. In or around November 2025, Plaintiff obtained copies of her consumer files from Defendant Early Warning and non-party ChexSystems, Inc. (“ChexSystems”).

16. Upon review of those files, Plaintiff observed that Defendant Early Warning and

non-party ChexSystems were reporting deposit accounts that she did not recognize and had never opened or authorized.

17. Specifically, Defendant Early Warning and ChexSystems reported the following accounts in Plaintiff's consumer file:

a. Bank of America checking account
Contribution Reference No. ending in 5688;
Incident Date February 23, 2022, and
Contribution Reason "Checking Account Fraud,"
Address: 1907 Flushing Avenue, Ridgewood, New York 11385-1029

b. JPMorgan Chase savings account
Account No: XXXXXX5295,
Date opened: September 13, 2022;
Address: 124 Claywood Drive, Brentwood, New York 11717-5706

c. JPMorgan Chase Account
Account No.: XXXXXX0782
Date opened: 12/30/2024
Close Date: 01/07/2025
Consumer Removed Date: 07/06/2025
Address: 14 Swallow Ln Brentwood, NY 11717-1318 USA

d. CitiBank
Contribution Reference No.: ending in 2224
Incident Date: January 4, 2022
Contribution Reason "Checking Account Fraud,"
Address: 1784 Stein Dr, Bay Shore, NY 11706-1716 USA

("Fraudulent Accounts")

18. Plaintiff was shocked to discover that Defendant Early Warning was reporting the Fraudulent Accounts because she had never opened, authorized, or benefited from any of those accounts.

19. Plaintiff further observed that the Fraudulent BoA Checking Account reflected an address where Plaintiff had never resided and an incorrect date of birth.

20. Likewise, the Fraudulent JPMorgan Chase Savings Account reflected an address where Plaintiff had never resided.

21. Although the Citibank account reflected certain identifying information associated with Plaintiff, Plaintiff did not open, authorize, or benefit from that account.

22. Upon discovering the Fraudulent Accounts, Plaintiff realized that the unauthorized banking activity affecting her identity had not been resolved and that inaccurate banking information continued to be maintained in her consumer files.

**Plaintiff's First Dispute with Defendant Early Warning and non-party ChexSystems**

23. Concerned that Defendant Early Warning and non-party ChexSystems were maintaining and reporting Fraudulent Accounts associated with her identity, Plaintiff determined that she needed to dispute the Fraudulent Accounts to prevent further harm to her consumer files and her ability to obtain banking services.

24. On or about December 18, 2025, Plaintiff disputed the inaccurate information appearing in her consumer files maintained by Defendant Early Warning and non-party ChexSystems.

25. Specifically, Plaintiff advised that the reported Fraudulent Accounts had been opened without her knowledge, authorization, or consent and were the product of identity theft. Plaintiff likewise disputed the inaccurate identifying information associated with those accounts.

26. Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

27. Plaintiff requested that the identity theft information be blocked from her credit file.

28. ChexSystems thereafter completed its reinvestigation but continued reporting the disputed Bank of America account.

29. Plaintiff subsequently supplemented her dispute by providing additional identity theft documentation, including an FTC Identity Theft Report, and again requested that the disputed

BoA account be removed from her consumer file.

30. Upon reinvestigation of Plaintiff's supplemental dispute, ChexSystems removed the disputed Bank of America account from Plaintiff's consumer file.

**Defendant Early Warning's Unreasonable Dispute Reinvestigation**

31. On or about December 23, 2025, Defendant Early Warning notified Plaintiff that it had determined the disputed JPMorgan Chase account with account number ending 0782 could not be verified and deleted that account from Plaintiff's consumer file.

32. Despite Plaintiff's dispute and supporting documentation, Defendant Early Warning continued reporting the disputed BoA and JPMorgan Chase with account number ending in 0592 accounts in Plaintiff's consumer file.

33. On or about January 21, 2026, Defendant Early Warning notified Plaintiff that, following its reinvestigation, it would continue reporting the disputed Bank of America account.

34. Defendant Early Warning failed to adequately review all of the information provided to it by Plaintiff.

35. Defendant Early Warning failed to reinvestigate Plaintiff's December 2025 dispute and failed to block the identity theft information.

36. Defendant Early Warning violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Plaintiff's Second Dispute to Defendant Early Warning**

37. Disturbed that Defendant Early Warning continued maintaining and reporting the Fraudulent Accounts despite her initial dispute and supporting documentation, Plaintiff

determined that she needed to supplement her dispute with additional identity theft documentation in an effort to have the Fraudulent Accounts blocked and removed from her consumer file.

38. On or about February 3, 2026, Plaintiff filed a complaint with the Federal Bureau of Investigation's Internet Crime Complaint Center ("IC3"), identifying both the Fraudulent Bank of America Checking Account and the Fraudulent JPMorgan Chase Savings Account as the product of identity theft.

39. On or about February 4, 2026, Plaintiff submitted a second dispute to Defendant Early Warning, enclosing her IC3 Complaint.

40. Plaintiff again advised Defendant Early Warning that the Fraudulent Bank of America Checking Account and the Fraudulent JPMorgan Chase Savings Account had been opened without her knowledge, authorization, or consent, were the product of identity theft, and requested that the disputed information be blocked and removed from her consumer file.

41. Plaintiff requested that the identity theft information be blocked from her credit file.

**Defendant Early Warning's Unreasonable Dispute Reinvestigation**

42. On or about February 11, 2026, Defendant Early Warning notified Plaintiff that it had completed its reinvestigation and concluded that Plaintiff's second dispute did not contain any new or additional information beyond her prior dispute received on or about December 22, 2025.

43. Defendant Early Warning therefore declined to modify its previous determination.

44. Regarding Plaintiff's February 11, 2026, response, Defendant Early Warning failed to adequately review all the information provided to it by Plaintiff.

45. Regarding Plaintiff's February 11, 2026, response, Defendant Early Warning failed to reinvestigate Plaintiff's dispute and failed to block the identity theft information.

46. Defendant Early Warning violated 15 U.S.C. § 1681i by failing to conduct a

reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**PLAINTIFF'S DAMAGES**

47. Plaintiff did exactly what she should have done upon realizing she was the victim of identity theft.

48. Plaintiff filed a complaint with the IC3.

49. Plaintiff disputed with Defendant and non-party CheckSystems multiple times in 2025 and 2026.

50. Plaintiff immediately identified herself as an identity theft victim and requested from the Defendant to block the account information that was the product of identity theft.

51. Defendant never deleted the Fraudulent Accounts that was the product of identity theft despite Plaintiff's multiple disputes.

52. As a direct result of Defendant's refusal to remove the Fraudulent Accounts which were a product of identity theft, Defendant Early Warning has continued to associate Plaintiff with the fraudulent banking information in her consumer file, causing her consumer file to inaccurately reflect accounts that she neither opened, authorized, nor benefited from.

53. Due to Defendant's refusals to comply with its respective obligations pursuant to the FCRA despite Plaintiff's repeated disputes and supporting identity theft documentation, Plaintiff's ability to obtain banking services was adversely affected.

54. On or about April 9, 2026, Plaintiff applied for a BoA deposit account but was denied because the bank was unable to verify her identity.

55. On or about May 18, 2026, Plaintiff applied for a Citibank deposit account but was

denied because of the fraudulent Citibank account.

56. On or about June 17, 2026, Plaintiff applied for a Wells Fargo deposit account but was denied because of the information contained in her Early Warning consumer report.

57. Further, and due to Defendants' inexplicable refusal to remove the Fraudulent Accounts from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendant, repeatedly, to no avail.

58. Defendant's conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendant would ever properly reinvestigate her disputes.

59. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

60. At all times pertinent hereto, the conduct of Defendant as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

61. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Accounts that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Accounts that was the product of identity theft.

62. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss,

reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**Violation of 15 U.S.C. § 1681e(b)**
**(Defendant Early Warning)**

63. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

64. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

65. On numerous occasions, Defendant prepared patently false consumer reports concerning Plaintiff.

66. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, Defendant readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and inaccurately represented that Plaintiff was associated with deposit accounts that had been reported for suspected fraud or had otherwise been opened in her name, even though Plaintiff had repeatedly advised Defendant Early Warning that she neither opened, authorized, nor benefited from those account.

67. Defendant Early Warning violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

68. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing

and trying to remove Fraudulent Accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove Fraudulent Accounts that were the product of identity theft.

69. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

70. Defendant's conduct, actions, and inactions was willful, or at least negligent, rendering them liable for actual damages, statutory damages, and punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**Violations of 15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Defendant Early Warning)**

71. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

72. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. *Id*.

73. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

74. In 2025 and 2026, Plaintiff disputed the inaccurate information with the Defendant,

requested that it correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Fraudulent BoA Checking and JPMorgan Chase Savings Accounts that were the product of identity theft which was a very stressful situation for the Plaintiff.

75. Plaintiff disputed the identity theft information to Defendant several times to no avail.

76. On at least one occasion, Plaintiff supported her dispute with a copy of the IC3 complaint.

77. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Early Warning conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

78. Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with Defendant.

79. Defendant's repeated refusals to delete the disputed Fraudulent Accounts provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

80. Defendant Early Warning violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

81. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove Fraudulent Accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove Fraudulent Accounts that were the product of identity theft.

82. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

83. Defendant's conduct, actions, and inactions were willful, or at least negligent, rendering them liable for actual damages, statutory damages, and punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**Violations of 15 U.S.C. § 1681c-2**
**Failure to Block Identity Theft Information**
**(Against Defendant Early Warning)**

84. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

85. Defendant Early Warning violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

86. Plaintiff repeatedly submitted ample evidence of the fact that she was an identity theft victim. Plaintiff further supported the fact that she was an identity theft victim by providing to Defendant copies of the IC3 Complaint.

87. Defendant should have blocked the identity theft information but failed to do so at

every turn.

88. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove Fraudulent Accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove Fraudulent Accounts that were the product of identity theft.

89. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

90. Defendant's conduct, actions, and inactions were willful, rendering the Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

91. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual

damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

Dated: New York,
July 8, 2026

**CONSUMER ATTORNEYS PLLC**

*/s/ Nisan Zaghi*
Nisan Zaghi, NY Bar # 5711072
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: (718) 925-0276
F: (718) 247-8020
E: nzaghi@consumerattorneys.com

*Attorneys for Plaintiff*
*Yokaira Altagracia Matias Cruz*